UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:22-CV-00051-JHM-HBB

DEANGELO POLLARD                                                PETITIONER

VS.

CRAIG HUGHS, WARDEN                                             RESPONDENT

## FINDINGS OF FACT, CONCLUSIONS OF LAW
## AND RECOMMENDATION

### I.       BACKGROUND

Petitioner Deangelo Pollard, through counsel, filed his Amended Petition for Writ of
Habeas Corpus Under 28 U.S.C. § 2254 (DN 31).[1]  Respondent Craig Hughs filed a response to
Gaither's petition (DN 34).  Pollard did not file a reply in support of his Amended Petition.  For
the reasons set forth below, the undersigned **RECOMMENDS** that Pollard's Amended Petition
(DN 31) be **DENIED** and **DISMISSED**.   Additionally, the undersigned **DOES NOT
RECOMMEND** issuance of a Certificate of Appealability for the claims set forth in Pollard's
Amended Petition.

### II.      FINDINGS OF FACT

#### A.  Proceedings Before the Henderson Circuit Court

On February 6, 2018, a Henderson County, Kentucky grand jury returned a two-count
indictment against Pollard arising out of the robbery and murder of Devin Fields on November 10,
2017 (DN 16-1 PageID # 288-89).   Count 1 charged that Pollard knowingly and unlawfully

---

1 With leave of Court (DN 30), Pollard filed the Amended Petition for Writ of Habeas Corpus (DN 31), which
supersedes the original petition for writ of habeas corpus (DN 1).  The District Judge referred this matter to the
undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(A) and (B), for rulings on all non-
dispositive motions; for appropriate hearings, if necessary; and for findings of fact and recommendations on any
dispositive matter (DN 9 PageID # 5).

murdered Devin Fields by shooting him (*Id.*).  Count 2 charged that Pollard committed the offense of first-degree robbery and/or the offense of complicity to first degree robbery, and while doing so he was armed with a deadly weapon and/or caused physical injury to Devin Fields (*Id.*).

Following a trial before the Henderson County Circuit Court ("Henderson Circuit Court"), the jury acquitted Pollard of murder, but convicted him of complicity to first-degree robbery (DN # 34-2 PageID 286-87).  *Pollard v. Commonwealth*, No. 2019-SC-0471-MR, 2021 WL 1133848, at * 1-2 (Ky. Mar. 25, 2021) ("*Pollard I*").  The Henderson Circuit Court imposed the jury's recommended sentence of twenty years imprisonment.  *Id.*  Pollard unsuccessfully moved for a new trial pursuant to Ky. R. Crim. P. 10.02 and/or for judgment of acquittal notwithstanding the verdict pursuant to Ky. R. Crim. P. 10.24, 10.06, and 10.26 (DN 34-5; DN 34-8).  Pollard appealed as a matter of right to the Kentucky Supreme Court.  *Id.* at *1.

B.      Direct Appeal

Pollard raised four claims in his direct appeal: (1) the trial court erred in denying his motion for directed verdict because no witness explicitly identified him in the courtroom as the person who robbed Fields; (2) the trial court erred in denying the motion for a new trial based on a *Batson*[2] violation; (3) the trial court erred in failing to grant any relief for the prosecution's discovery violations (ballistics report, police cell phone messages, fingerprint training manual, and Tapp's plea agreement); and (4) cumulative errors at trial warranted a new trial.  *Id.* at *2.  The Kentucky Supreme Court found none of Pollard's challenges meritorious and affirmed the Henderson Circuit Court's judgment.  *Id.* at *2-7.

The Kentucky Supreme Court provided the following summary of the evidence presented during the jury trial before the Henderson Circuit Court:

---

2 *Batson v. Kentucky*, 476 U.S. 79 (1986).

In November 2017, Devin Fields, with a friend, Charles Olson, drove to Henderson, Kentucky. Olson testified that Fields' intent was to sell marijuana. Eventually, they met Keandre Tapp and Z.G., a juvenile, in a park. Tapp and Z.G. advised that they needed a ride to their brother's apartment to get money. These four then got in Fields' car: Fields drove, Olson sat in the front passenger seat, with Tapp and Z.G. in the back. When they arrived at their destination, Tapp and Z.G. exited the vehicle. According to Olson, three people got in the back of the car 5 to 10 minutes later. Fields then started laying out marijuana on the front center console. At that point, Olson felt a gun at the back of his head with a warning not to move. A scuffle ensued over the marijuana, and someone from the back seat shot Fields fatally in the chest. Olson did not know who fired the shot but believed it came from the back center or back right.

Tapp testified at trial. He had never met Fields prior to the day in question, but had communicated with him through Snapchat, learned Fields would be travelling through Henderson and discussed buying marijuana from Fields. Tapp was, however, good friends with Z.G. and Pollard. He told them of his plan to buy marijuana, but that Pollard wanted to rob Fields, taking the marijuana instead. Tapp's testimony corroborated Olson's testimony about the initial meeting, driving to the other apartment complex, and Tapp and Z.G. exiting the vehicle. When Tapp and Z.G. with Pollard returned to Fields' car, Tapp and Pollard were armed; Tapp had a .22 revolver and Pollard had a silver and black .38 special. Tapp sat behind Fields, Z.G. was in the center back, and Pollard was behind Olson. When Fields displayed the marijuana, Tapp and Pollard revealed their guns. Tapp testified that, in the fight over the marijuana, Pollard shot Fields after Fields grabbed Tapp's revolver. Immediately following the shooting, Pollard and Tapp exited the vehicle and fled. Tapp acknowledged making a plea bargain in exchange for his testimony.

Z.G. testified about his involvement. He testified that he was very close to Tapp, but only knew Pollard as an acquaintance. His testimony corroborated that of Olson and Tapp as to the initial meeting and driving to the other apartment complex, although he denied initial knowledge of the marijuana transaction/robbery. He corroborated Tapp's account of returning to Fields' car with Pollard, but that when Z.G. realized something bad was about to happen, he said he had to go to the bathroom and got out of the car. Z.G. testified that he saw Tapp and Pollard pull their guns, the scuffle, and then Pollard shoot Fields.

*Id.* at *1-2.

3

C.    State Postconviction Relief Proceedings

On May 27, 2022, Pollard filed *pro se* a motion to vacate, set aside or correct sentence pursuant to Ky. R. Crim. P. 11.42 ("Rule 11.42 motion") (DN 34-10) and a memorandum in support that included a request an evidentiary hearing (DN 34-11 PageID # 351-80).  *Pollard v. Commonwealth*, No. 2022-CA-0904-MR, 2023 WL 3666412, at *1 (Ky. Ct. App. May 26, 2023) ("*Pollard II*").  His RCr 11.42 motion alleged three instances of ineffective assistance of counsel (DN 34-10 PageID # 349; DN 34-11 PageID # 354-79).   The Henderson Circuit Court denied Pollard's request for an evidentiary hearing and his Rule 11.42 motion (DN 34-13 PageID # 407-13).  *Pollard*, 2023 WL 3666412, at *1.

Pollard appealed the Henderson Circuit Court's order to the Kentucky Court of Appeals. *Id.*  His appellate brief presented claims of ineffective assistance of counsel previously raised before the trial court, new claims of ineffective assistance of counsel, and new claims that challenged various trial court rulings during the trial.  *Id.* at *2-7.  The Kentucky Court of Appeals treated the new claims as procedurally defaulted.  *Id.*  Further, the appellate court found that the record and applicable law refuted Pollard's ineffective assistance of counsel claims set forth in his Rule 11.42 motion.  *Id.*

D.    The Habeas Petition and Amended Petition

On April 13, 2022, Pollard filed *pro se* his original petition (DN 1).  It asserted the following claims: (1) the trial court erred in denying Pollard's motion for directed verdict; (2) the trial court erred in denying Pollard's *Batson* challenge; (3) the trial court erred in denying Pollard's motion that alleged four discovery violations; and (4) the cumulative errors of the trial court were prejudicial (DN 1 PageID # 5-10).  Notably, Pollard advised that he was still pursuing ineffective assistance of counsel claims before the Kentucky state courts (*Id.* at PageID # 3, 12).

In his response, Hughs asserted that Pollard raised the same four claims presented in his direct appeal to the Kentucky Supreme Court (DN 17 PageID # 135).  Hughs made procedural challenges and responded to the merits of the claims (*Id.* at PageID # 136-44).

Pollard filed a reply (DN 19).  Pollard advised that the Henderson Circuit Court denied his RCr 11.42 motion and asked that this action be held in abeyance until the Kentucky Court of Appeals ruled on his appeal (*Id.* at # 152-54).

The Court granted Pollard's request and stayed the case pending the final state court ruling (DN 22).  On June 7, 2023, Pollard notified the Court that the Kentucky Court of Appeals had issued its decision (DN 23).  The undersigned issued an Order that granted Pollard's motion to lift the stay and his motion for leave to file an amended habeas petition (DN 24 PageID # 203-04).

On October 27, 2023, Pollard filed his Amended Petition (DN 31), which supersedes the original petition (DN 1).  The Amended Petition includes the four claims set forth in the original petition plus it raises, for the first time, two ineffective assistance of trial counsel claims (DN 31 PageID # 246-59).  The new claims accuse trial counsel of failing to: (1) raise a double jeopardy defense; and (2) seek lessor included offense instructions (*Id.* at PageID # 257, 259).

In his response, Hughs raises various procedural and merits challenges to the claims in the Amended Petition (DN 34 PageID # 269-83).

### III.     CONCLUSIONS OF LAW

#### A.     Standard of Review

Because Pollard filed his petition on April 13, 2022, and his Amended Petition on October 27, 2023, review of the state court decisions is governed by Chapter 153 of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA") (DN 1).  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  Under AEDPA, as to each claim asserted by

Pollard, the Court must first determine whether it alleges that a federal constitutional right has been violated. *Williams v. Taylor*, 529 U.S. 362, 367 (2000). If the answer is in the affirmative and the state court adjudicated the federal constitutional claim on its merits, then this Court must employ the standard of review set forth in 28 U.S.C. § 2254(d) to determine whether to grant the petition. *Id.* at 367, 402-03, 412-13.

As amended, by Chapter 153 of AEDPA, § 2254(d) provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

When the Court conducts a review under either clause of 28 U.S.C. § 2254(d)(1), it must look only to the clearly established precedent of the United States Supreme Court. *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003). In *Andrade*, the Supreme Court explained:

> Section 2254(d)(1)'s "clearly established" phrase "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In other words, "clearly established Federal law" under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. *See id.*, at 405, 413, 120 S.Ct. 1495; *Bell v. Cone*, 535 U.S. 685, 698, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). In most situations, the task of determining what we have clearly established will be straightforward.

*Id.* at 71-72.

The phrase "contrary to" means "'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405 (citing Webster's Third New International Dictionary 495 (1976)). Thus, under the "contrary to" clause of § 2254(d)(1), the Court may grant the writ if: (a) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (b) the state court decides a case differently than the Supreme Court "has on a set of materially indistinguishable facts." Id. at 412-13.

Under the "unreasonable application" clause of § 2254(d)(1), the Court may grant the writ if the state court identifies the correct governing legal rule from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. Id. at 407-08, 413. When the Court makes the "unreasonable application" inquiry it "should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. The state court's application of clearly established federal law must be more than simply erroneous or incorrect, it must be objectively unreasonable. Id. at 409-11. Consequently, "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

A petitioner may obtain relief under § 2254(d)(2) "only by showing" the state court "conclusion to be 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) ("Miller-El II") (quoting 28 U.S.C. § 2254(d)(2)).[3] This "unreasonable determination" standard in § 2254(d)(2)

---

[3] The Supreme Court has instructed, "[w]e may not characterize . . . state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance." Brumfield v. Cain, 576 U.S. 305, 313-14 (2015) (quoting Wood v. Allen, 558 U.S. 290, 301 (2010)). Moreover, "§ 2254(d)(2) requires that we accord the state trial court substantial deference." 576 U.S. at 301. This means that if "'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's [factual] determination.'" Wood, 558 U.S. at 301 (quoting Rice v. Collins, 546 U.S. 333, 341-42 (2006)).

applies to state-court decisions and "the granting of habeas relief." *Miller-El v. Cockrell*, 537 U.S. 322, 341-42 (2003) ("*Miller-El I*"). By contrast, the "clear and convincing" evidence standard found in § 2254(e)(1) "pertains only to state-court determinations of factual issues, rather than decisions." *Id.* at 342. Thus, in making an assessment under § 2254(d)(2), the Court presumes the state court's factual findings to be sound unless the petitioner rebuts the "presumption of correctness by clear and convincing evidence." *See Miller-El II*, 545 U.S. at 240 (quoting § 2254(e)(1)).[4] The "unreasonable determination" standard in § 2254(d)(2) "is demanding but not insatiable; as we said the last time this case was here, '[d]eference does not by definition preclude relief.'" *Id.* (quoting *Miller-El I*, 537 U.S. at 340).

## B.    Trial Based Challenges

### 1.  Denial of Motion for Directed Verdict

In Ground One, Pollard disagrees with the Kentucky Supreme Court's adjudication of his directed verdict motion (DN 31 PageID # 246). The undersigned will begin by addressing Hughs' procedural challenges.

First, Hughs posits that Pollard has failed to state facts supporting his claim (*Id.*) (citing Rule 2(c)(2) of the Rules Governing Section 2254 Cases in the United States District Courts; *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Hall v. Beast*, 116 F. App'x 557, 559 (6th Cir. 2004)). Specifically, Pollard asserts:

> . . . the trial court did not [sustain] the burden of proof by more than a scintilla of evidence, with such evidence being probative value and of the quality to induce conviction in the minds of reasonable jurors. There was no one convicted of robbery . . . no one convicted of murder[.] I was acquitted of murder and robbery in the first degree.

---

4 The Supreme Court has yet to define the "precise relationship between § 2254(d)(2) and § 2254(e)(1)[.]" *Burt v. Titlow*, 571 U.S. 12, 18 (2013). Further, it has "explicitly left open the question whether § 2254(e)(1) applies in every case presenting a challenge under §2254(d)(2)." *Wood*, 558 U.S. at 300.

(DN 31 PageID # 246).  As Pollard has provided some of the facts supporting his claim, he will be given the benefit of the doubt on this first procedural challenge.

Next, Hughs asserts that Pollard procedurally defaulted this federal constitutional claim because he failed to "fairly present" it in the direct appeal brief submitted to the Kentucky Supreme Court (DN 34 PageID # 273-74).  Hughs explains that under Kentucky procedural law Pollard cannot remedy his earlier omission (*Id.*).

A federal court may not entertain a habeas claim unless the petitioner has first exhausted his available state court remedies.  28 U.S.C. § 2254(b)(1)(A); *Beach v. Moore*, 343 F. App'x 7, 10 (6th Cir. 2009).  To exhaust his available state court remedies, a petitioner "must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  *Baldwin v. Reese*, 541 U.S. 27, 29, (2004) (citation omitted).  If a claim is not fairly presented, and the opportunity to present the claim to the state courts has expired, then the claim is deemed procedurally defaulted.  *Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004).  Federal review of a procedurally defaulted claim is barred unless the petitioner can show "cause" for the default and actual "prejudice" arising from the claimed constitutional error *or* that failure to consider the claim will result in a "fundamental miscarriage of justice."  *See Harris v. Reed*, 489 U.S. 255, 262-64 (1989) (cleaned up); *Murray v. Carrier*, 477 U.S. 478, 485, 495-96 (1986).

A claim is "fairly presented" where the petitioner has "asserted both the factual and legal basis for his claim to the state courts."  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir.2000) (citation omitted).  The Sixth Circuit has indicated there are four ways a petitioner can "fairly present" his claim to the state courts: (1) reliance upon federal cases employing a constitutional analysis; (2) reliance upon state cases employing a federal constitutional analysis; (3) "phrasing

the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right;" or (4) alleging facts that are well within the mainstream of constitutional law. *Beach*, 343 F. App'x at 10 (citation omitted).

Pollard's claim in the direct appeal brief did not rely on federal or state cases employing a federal constitutional analysis (DN 34-15 PageID # 446-48). Thus, the first and second factors are not satisfied.

As to the third factor, Pollard's direct appeal brief includes the following sentence:

> Pollard was entitled to a directed verdict of acquittal and his constitutional rights to due process and a fair trial were violated by the denial. Fifth, Sixth, and Fourteenth Amendments, U.S. Constitution; §§ 2 and 11 Kentucky Constitution.

(*Id.* at PageID # 448). "While a petitioner need not cite chapter and verse of constitutional law," the Sixth Circuit indicates that "general allegations of the denial of rights to a fair trial and due process do not fairly present claims that specific constitutional rights were violated." *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (internal quotation marks and citation omitted). The references in Pollard's direct appeal brief are exactly the type of "general allegations" that the Sixth Circuit has found do not "fairly present" the substance of a federal claim to a state court. *Id.*; *see Beach*, 343 F. App'x at 12. Consequently, the third factor is not satisfied.

The fourth factor is whether Pollard's direct appeal brief alleged facts that are well within the mainstream of constitutional law. Pollard argued although the Commonwealth's witnesses Green and Tapp testified that Pollard robbed and shot Fields, they never pointed to Pollard in the courtroom and confirmed that he was the Pollard they were talking about (*Id.* at PageID # 447). The undersigned will give Pollard the benefit of the doubt and find that his direct appeal brief alleged facts that challenge the constitutional sufficiency of the evidence that the Commonwealth presented to prove he was the person who robbed and shot Fields (*Id.*). Therefore, the fourth factor

10

is satisfied because the facts alleged in Pollard's direct appeal brief are sufficient to alert the
Kentucky Supreme Court to the federal nature of the claim.

Moving on to the merits of Pollard's claim, the pertinent part of the Kentucky Supreme
Court's opinion reads:

> In *Culver v. Commonwealth*, 590 S.W.3d 810, 812–13 (Ky. 2019),
> we stated,
>
>> On the motion for a directed verdict, the single controlling
>> question for the trial court is whether the Commonwealth has
>> sustained the burden of proof by more than a scintilla of
>> evidence, with such evidence being of probative value and of
>> the quality to induce conviction in the minds of reasonable
>> men. *James v. England*, 349 S.W.2d 359, 361 (Ky. 1961)
>> (citation omitted). When the evidence is insufficient to induce
>> reasonable jurors to believe beyond a reasonable doubt that a
>> defendant is guilty, a verdict may be directed. *Commonwealth
>> v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). When assessing
>> the evidence, the trial court must consider the
>> Commonwealth's evidence as a whole, assume the evidence
>> is true, and draw all reasonable inferences from the evidence
>> in favor of the Commonwealth. *Id.* The trial court may not
>> consider questions of weight and credibility, those being the
>> province of the jury. *Id.*
>
> Our standard of review on such an issue is "if under the evidence as
> a whole, it would be clearly unreasonable for a jury to find guilt,
> only then the defendant is entitled to a directed verdict of acquittal."
> *Ray v. Commonwealth*, 611 S.W.3d 250, 266 (Ky. 2020) (quoting
> *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991)).
>
> Pollard argues that he was entitled to a directed verdict in this case
> because no one specifically identified him at trial. While the trial
> court acknowledged that no witness "pointed a finger" at Pollard and
> no one ever identified the person sitting at counsel table as
> DeAngelo Pollard, it nevertheless found that enough testimony and
> evidence by other means was adduced to overrule the motion. On
> the morning of the first day of trial, during voir dire, Pollard's own
> counsel identified him to the jury. Thereafter, during trial, Tapp's
> and Z.G.'s testimony provided ample identifying information that
> was unique to Pollard. Tapp testified to Pollard's nickname, stated
> that he had known Pollard for a long time and that the two were good
> friends. Tapp testified that he knew the weapon Pollard used to help

him rob and ultimately kill Fields.  Afterwards, the Commonwealth called Z.G. to testify and asked him similar biographical information about Pollard.  Z.G. noted that while he was not close friends with Pollard, the two were friendly and that Z.G. and Tapp had been friends since elementary school.  Following their direct testimony, Pollard's counsel conducted vigorous cross-examination of both witnesses.

We hardly need authority to state that convictions may be based on circumstantial evidence.  *E.g.*, *Rogers v. Commonwealth*, 315 S.W.3d 303, 311 (Ky. 2010).  Even in the absence of a "finger point," whom would Tapp and Z.G. have been testifying about?  Consequently, the jury was properly presented with ample evidence that the young man sitting at the defense table was the same Pollard whom Tapp and Z.G. spoke about and identified at length.  The jury could, and did, make reasonable factual conclusions regarding the defendant.  We note that the jury ultimately acquitted Pollard of murder and robbery in the first degree, demonstrating its ability to observe and weigh the evidence, as was its duty.  Pollard was not entitled to a directed verdict.

*Pollard I*, 2021 WL 1133848, at *2-3.

When the Court conducts a review under either clause of 28 U.S.C. § 2254(d)(1), it must look only to the clearly established precedent of the United States Supreme Court.  *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003).  At issue here is the clearly established precedent set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979) that applies to motions for a directed verdict.

Because the restrictive standard of review set out in § 2254(d)(1) applies to Pollard's claim, federal habeas relief may not be granted unless he demonstrates the Kentucky Supreme Court's adjudication of his claim "was contrary to, or involved an unreasonable application of," the clearly established precedent in *Jackson*.  *See Harrington v. Richter*, 562 U.S. 86, 100-01 (2011) (quoting § 2254(d)(1); *Williams*, 529 U.S. at 412).  This is different from what Pollard appears to be seeking, a review of the state court record to determine whether he has satisfied his burden under the clearly established precedent in *Jackson*.  *See Harrington*, 562 U.S. at 101.  Stated another way, the issue before the Court is not whether Pollard was entitled to a directed verdict.  *See id.*  Rather, it is

whether the Kentucky Supreme Court's decision—answering that inquiry in the negative—was "was contrary to, or involved an unreasonable application of," the clearly established precedent in *Jackson*. *See id.* at 100 (quoting 28 U.S.C. § 2254(d)(1)).

The analysis of the Supreme Court of Kentucky did not squarely address the federal Constitutional issue in question because it applied the standard in *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). *See Pollard I*, 2021 WL 1133848, at *2-3. However, the undersigned will review this claim under § 2254(d)(1) because the Sixth Circuit has indicated that the analysis in *Benham* does bear some similarity to the requisite Constitutional analysis. *See Dyer v. Bowlen*, 465 F.3d 280, 284 (6th Cir. 2006) (indicating in such circumstances the Court will "review the record and the law, and will reverse only if we determine that the state court decision was contrary to, or an unreasonable application of, federal law"); *Filiaggi v. Bagley*, 445 F.3d 851, 854 (6th Cir. 2006); *see also Bowen v. Haney*, 622 F. Supp. 2d 516, 547 (W.D. Ky. 2008) (conducting a § 2254(d)(1) review because the *Benham* standard applied by the Supreme Court of Kentucky was found to be similar to the *Jackson* standard); *Longwell v. Arnold*, 559 F. Supp. 2d 759, 767-68 (E.D. Ky. 2008)(same). More specifically, the undersigned will determine whether the decision of the Supreme Court of Kentucky "was contrary to, or an unreasonable application of," the clearly established precedent set forth in *Jackson*. 28 U.S.C. § 2254(d)(1).

The clearly established Supreme Court precedent directs that courts should review the record in the light most favorable to the prosecution to determine whether a rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 324. If the answer is in the affirmative, then the motion for a directed verdict of acquittal should have been denied and the case should have been presented to the jury. *Id.* at 324-26. Even if the evidence is circumstantial. *Id.* The Kentucky Supreme Court—after it reviewed the evidence in the record in

the light most favorable to the prosecution—found that Pollard was not entitled to a directed verdict because the Commonwealth presented ample evidence for the jury to find beyond a reasonable doubt that the young man sitting at the defense table during the trial was the same Pollard whom Tapp and Z.G. testified about and identified at length. Consequently, Pollard has failed to demonstrate that the Kentucky Supreme Court's adjudication of his claim is contrary to or an unreasonable application of the clearly established precedent of the United States Supreme Court set forth in *Jackson*. 28 U.S.C. § 2254(d)(1). Additionally, Pollard has not demonstrated that the Kentucky Supreme Court's conclusion was based upon "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Therefore, Pollard is not entitled to relief on the directed verdict claim raised in Ground One in the amended habeas petition.

When the Court rejects a claim on the merits, the petitioner must demonstrate that reasonable jurists would find the Court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Pollard has not demonstrated that reasonable jurists would find the above assessment of his claim debatable or wrong. Therefore, Pollard is not entitled to a Certificate of Appealability on the directed verdict claim raised in Ground One in the amended habeas petition.

*2.    Batson Violation*

In Ground Two, Pollard disagrees with the Kentucky Supreme Court's adjudication of his claim under *Batson v. Kentucky*, 476 U.S. 79 (1986) (DN 31 PageID # 248). Specifically, Pollard's claim reads:

> The trial Court must engage in a three-step inquiry to determine whether a prospective juror was struck for an impermissible reason[.] [T]he first step requires the defendant [sic] to make a prima facie showing that the peremptory challenge was based on

14

> race.  After the requisite showing by the defendant, the burden shifts
> to the prosecution to present a race-neutral explanation for its
> peremptory strike.  The trial court must determine whether the
> prosecutor's R/N expla [sic] was sufficient.

(*Id.*).

Hughs asserts that Pollard's claim should be summarily dismissed because he has made "no mention of any of the specific facts of his case or errors committed by either the judge or the parties" (DN 34 PageID # 276).  Hughs points out that Pollard has instead made a non-specific statement about the steps a trial court must take in analyzing peremptory strikes under *Batson* (*Id.*).

Habeas petitions must satisfy the pleading requirements in Rule 2(c).  *McFarland v. Scott*, 512 U.S. 849, 856 (1994).  Rule 2(c)(2) of the Rules Governing Section 2254 Cases states, "[t]he petition must . . . state the facts supporting each ground[.]"  When a petitioner does not comply with the pleading requirement in Rule 2(c)(2), courts view the claim as raised a perfunctory manner and deem it abandoned.  *See Rose v. Warden Chillicothe Corr. Inst.*, No. 18-3997, 2019 WL 5260158, at *4 (6th Cir. July 17, 2019).  Clearly, Pollard failed to comply with Rule 2(c)(2) because he has not stated any facts in support his *Batson* claim.  Consequently, this claim should be deemed abandoned due to Pollard's failure to comply with Rule 2(c)(2).  Therefore, Pollard is not entitled to relief on the directed verdict claim raised in Ground Two in the amended habeas petition.

In *Slack v. McDaniel*, the Supreme Court established a two-pronged test that is used to determine whether a Certificate of Appealability should issue on a habeas claim denied on procedural grounds.  529 U.S. 473, 484-85 (2000).  To satisfy the first prong of the *Slack* test, a petitioner must demonstrate "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right."  *Id.* at 484.  To satisfy the second prong, a petitioner must show "jurists of reason would find it debatable whether the district court was

correct in its procedural ruling." *Id.* Notably, the Court need not conduct the two-pronged inquiry in the order identified or even address both parts if a petitioner makes an insufficient showing on one part. *Id.* at 485. For example, if the Court determines a petitioner failed to satisfy the procedural prong, then it need not determine whether the constitutional prong is satisfied. *Id.*

As a plain procedural bar is present, reasonable jurists would not find it debatable whether this claim should be deemed abandoned due to Pollard's failure to comply with Rule 2(c)(2). Therefore, the undersigned does not recommend the issuance of a Certificate of Appealability as to the *Batson* claim raised in Ground Two of the Amended Petition.

Even if the Court found that Pollard had complied with Rule 2(c)(2) and went on to address the merits of his *Batson* claim, Pollard has failed to demonstrate that he would be entitled to relief. The Kentucky Supreme Court acknowledged the clearly established United States Supreme Court precedent established in *Batson*, which involves a three-step inquiry to determine whether a prospective juror was struck for an impermissible reason. *Pollard I*, 2021 WL 1133848, at *3-4. Further, the Kentucky Supreme Court provided the following summary of the pertinent facts:

> In this case, the Commonwealth exercised a peremptory strike as to the last remaining African-American in the thirty-one-member venire panel. When Pollard challenged the strike, the Commonwealth advised that the juror had misrepresented on her Juror Qualification Form, specifically answering "no" to the question as to whether she had been convicted of a crime. The audio portion of the video record is unclear, but apparently the Commonwealth's Attorney was questioned about his factual basis. He is shown retreating to his table and then returning to the bench with papers which he then shows to the trial judge and defense counsel. The attorneys and judge then appear to discuss the information presented: the juror's conviction of a crime, apparently welfare fraud, and, additionally, whether she was a Henderson County resident. Significantly, at this point in the proceeding, all thirty-one members of the venire panel were present because immediately afterwards, the trial court directed the clerk to randomly select thirteen jury members to try the case. But, while counsel were at the bench during the *Batson* challenge, no one

16

> thought to call the juror up to the bench for further questioning or
> clarification. In his post-trial motion, as in this appeal, Pollard
> argued that the Commonwealth's race-neutral reason was pretextual
> since he had discovered that the Commonwealth's criminal record
> check may have uncovered a woman with a similar name in a
> different county who had been placed on welfare fraud diversion in
> 2018.

*Id.* at *3. In a footnote, the Kentucky Supreme Court explained that the record Pollard proffered

in support of his claim showed "a woman with an identical first name and a surname which is

similar but additionally has 'on' at the end." *Id.* at *3 n.4. It provided the following example, "the

difference between 'Judy Roberts' and 'Judy Robertson.'" *Id.* Following a discussion of the

applicable law concerning the latitude afforded to prosecutors in utilizing peremptory challenges,

the Kentucky Supreme Court's opinion reads:

> In this case, the Commonwealth articulated clear reasons for striking
> the juror. We find it notable that when Pollard's counsel brought
> this challenge to the trial court, the Commonwealth presented the
> CourtNet report to the judge and Pollard's counsel. Counsel and the
> court then reviewed the document, after which the court made its
> ruling. No one discovered the mistake during the bench conference
> when anyone, the trial court, the Commonwealth or defense counsel,
> could have easily asked clarifying questions of the juror. While the
> Commonwealth may have conflated two individuals with similar
> names, we are unable to say that Pollard has met his burden of
> proving a racially-motivated reason for the Commonwealth's
> peremptory challenge.

*Pollard I*, 2021 WL 1133848, at *3-4.

Pollard has not demonstrated that the Kentucky Supreme Court's adjudication of his

*Batson* claim is contrary to or an unreasonable application of the clearly established precedent of

the United States Supreme Court set forth in *Batson*. 28 U.S.C. § 2254(d)(1). Additionally, Pollard

has not demonstrated that the Kentucky Supreme Court's conclusion was based upon "an

unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d)(2). In sum, even if the Court reviewed Pollard's claim on the

merits, he would still not be entitled to relief on the directed verdict claim raised in Ground Two in the amended habeas petition.

3.     *Discovery Violations*

In Ground Three, Pollard disagrees with the Kentucky Supreme Court's adjudication of his discovery violations claim (DN 31 PageID # 249).  Specifically, Pollard's claim reads:

> The alleged violation concern[s] four items: ballistics testing, police phone messages, police fingerprints training manual, and a plea bargin [sic] term given to the co-defenant [sic] Tapp.  RCr 7.24 reflects a policy that a crimal [sic] defendant not to be left in the dark which Pollard was.  He was not informed of none of the above which he could not set up a defense.

(*Id.*).

In response, Hughs argues that Pollard's claim should be summarily dismissed because it is vague and conclusory, not tied to the specific facts of his case, and fails to state how the discovery rules were violated (DN 34 PageID # 278).  Additionally, Hughs contends that on direct appeal Pollard raised this claim as a matter of state law with only a passing reference to his federal constitutional rights (*Id.*).  Hughs points out that the Kentucky Supreme Court decided Pollard's claim on state-law grounds and that this Court is unable to review the state-court decision (*Id.* at PageID # 278-79) (citing *Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002) (indicating that violations of state discovery rules is not cognizable in federal habeas review); *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (explaining that federal courts have "no power to review a state law determination that is sufficient to support the judgment[.]")).

The undersigned will begin with Hughs' procedural challenge based on Rule 2(c)(2) of the Rules Governing Section 2254 Cases.  Ground Three identifies four specific discovery violations under Ky. R. Crim. P. 7.24 and makes a general assertion about not being able to mount a defense

18

(DN 31 PageID # 249).  As Pollard has set forth facts supporting his claim, he has complied with Rule 2(c)(2) of the Rules Governing Section 2254 Cases.

Moving on to Hughs' second procedural challenge.  Specifically, Hughs argues while Pollard's direct appeal brief did raise the four discovery violations under Ky. R. Crim. P. 7.24, it does not "fairly present" a federal constitutional claim to the Kentucky Supreme Court (DN 34-15 PageID # 453-58).

As previously mentioned, the Sixth Circuit indicates that there are four ways a petitioner can "fairly present" his claim to the state courts.  *Beach v. Moore*, 343 F. App'x 7, 10 (6th Cir. 2009).  Pollard's claim in the direct appeal brief did not rely on federal or state cases employing a federal constitutional analysis (DN 34-15 PageID # 454-57).  Instead, Pollard relied on Ky. R. Crim. P. 7.24 and Kentucky state court cases applying that rule (*Id.*).  Thus, Pollard has not satisfied the first and second factors of fairly presenting a constitutional claim.

As to the third factor, Pollard's direct appeal brief merely challenged the trial court's unfavorable ruling on the purported discovery violations under Ky. R. Crim. P. 7.24 and included the bare assertion that Pollard had been denied:

> due process of law, a fair trial, and reliable sentencing.  Fifth, Sixth, Eighth and Fourteenth Amendments, U.S. Constitution; §§ 1,2, 3, 7, 11 and 17 Kentucky Constitution; RCr 7.24.

(*Id.* at PageID # 457).  These are the type of "general allegations" that the Sixth Circuit has held do not "fairly present" the substance of a federal claim to a state court.  *See Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006); *see also Beach*, 343 F. App'x at 12.  Consequently, Pollard has not satisfied the third factor.

The fourth factor is whether Pollard's direct appeal brief alleged facts that are well within the mainstream of constitutional law.  Again, Pollard's direct appeal brief merely challenged the

trial court's unfavorable ruling on the purported discovery violations under Ky. R. Crim. P. 7.24 and made general assertions about violations of due process of law, a fair trial, and reliable sentencing.  What is missing is any allegations substantiating the purported violations of due process of law and a fair trial.  Without any such allegations, it cannot be said that Pollard alleged facts well within the mainstream of federal due process or fair trial jurisprudence.  *See Beach*, 343 F. App'x at 12.

None of the four factors support a finding that Pollard's direct appeal brief fairly presented a federal constitutional claim.  Consequently, he did not sufficiently alert the Kentucky Supreme Court to the federal nature of his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000).  Moreover, under Kentucky law Pollard is now procedurally barred from attempting to raise a federal constitutional claim before the Kentucky Supreme Court.  *See Bronston v. Commonwealth*, 481 S.W.2d 666, 667 (Ky. 1972).

This means that federal review of Pollard's procedurally defaulted claim is barred unless he can show "cause" for the default and actual "prejudice" arising from the claimed constitutional error *or* that failure to consider the claim will result in a "fundamental miscarriage of justice."  *See Harris v. Reed*, 489 U.S. 255, 262-64 (1989) (cleaned up); *Murray v. Carrier*, 477 U.S. 478, 485, 495-96 (1986).  But Pollard has not attempted to make either showing, even though Hughs brought this procedural default issue to Pollard's attention.  Therefore, federal review of the claim raised in Ground Three in the Amended Petition is barred.

Jurists of reason would not find it debatable whether federal review of Pollard's *Brady* claim is barred.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Therefore, the undersigned does not recommend the issuance of a Certificate of Appealability as to the claim raised in Ground Three of the Amended Petition.

Additionally, as worded Ground Three alleges four discovery violations under Ky. R. Crim. P. 7.24 (DN 31 PageID # 249). This claim is not cognizable on habeas, because it does not involve a federal constitutional violation. *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002) (indicating that a claimed violation Ohio's discovery rule is not cognizable on habeas); *Bogseth v. Burt*, No. 1:20-CV-977, 2022 WL 34664, at *15 (W.D. Mich. Jan. 4, 2022) (explaining that a claimed violation of Michigan's discovery rules is not cognizable in the habeas action); *Burns v. Lafler*, 328 F. Supp. 2d 711, 732 (E.D. Mich. 2004). Only claims that allege noncompliance with "the Constitution or laws or treaties of the United States" render a state court criminal judgment susceptible to attack in a habeas proceeding. 28 U.S.C. § 2254; *see Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Lorraine*, 291 F.3d at 441. Therefore, Pollard would not be entitled to federal habeas relief on the Kentucky state law discovery violations raised in Ground Three of the Amended Petition.

### 4. Cumulative Error

In Ground Four, Pollard specifically states:

> Cumulative error is a limited doctrine, which is only appropriated when, individual errors were themselves substantial, bordering, at least, on the prejudicial. There was numerous discovery violations the prosecutor with held [sic] exculpatory evidence which Icould [sic] have set up a defense with. See RCr. 724 of the Ky. court rules.

(DN 31 PageID # 251).

In response, Hughs points out that "[t]he Kentucky Supreme Court found no cumulative error, and therefore no basis for relief" (DN 34 PageID # 280). Further, Hughs argues Pollard is not entitled to relief on this claim because the United States Supreme Court "has not specifically recognized cumulative error as a basis for habeas relief" (*Id.*) (citing *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006)).

The Sixth Circuit has held that, post-AEDPA, a cumulative effect claim is not cognizable. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) ("[P]ost-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief."). Therefore, the undersigned concludes the cumulative effect claim in Ground Four is not cognizable in this habeas proceeding.

Jurists of reason would not find it debatable whether federal review of the cumulative effect claim in Ground Four is not cognizable in this habeas proceeding. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, the undersigned does not recommend the issuance of a Certificate of Appealability as to the cumulative effect claim raised in Ground Four of the Amended Petition.

C.     Ineffective Assistance of Counsel Claims

1. *No Double Jeopardy Defense*

Ground Five accuses trial counsel of failing to raise a defense to a double jeopardy issue arising out of Pollard being tried for a capital offense of murder and first-degree robbery (DN 31 PageID # 257). Pollard contends that first-degree robbery was an aggravating circumstance used to charge him with a capital offense (*Id.*). Pollard believes that this made the first-degree robbery an element of the capital offense murder thereby violating his double jeopardy (*Id.*).

In response, Hughs argues that Pollard's claim should be summarily dismissed for failure to comply with Rule 2(c)(2) of the Rules Governing Section 2254 Cases (DN 34 PageID # 280). Hughs also explains that Pollard has failed to demonstrate that adjudication of this claim by the Kentucky Court of Appeals is contrary to or an unreasonable application of the clearly established Supreme Court precedent in *Strickland v. Washington*, 466 U.S. 668 (1984) (*Id.* at PageID # 280-82). Hughs also claims that Pollard has failed to show that the Kentucky Court of Appeals made an unreasonable factual determination from the state court record (*Id.* at PageID # 282).

22

When the Court conducts a review under either clause of 28 U.S.C. § 2254(d)(1), it must look only to the clearly established precedent of the United States Supreme Court. *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003). Here, the clearly established precedent is set forth in *Strickland* and its progeny. To establish ineffective assistance of counsel, a defendant must show deficient performance and resulting prejudice. *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *Strickland*, 466 U.S. at 687.

The performance inquiry requires "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In making this assessment, the Court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Further, the Court must determine whether, in light of all the circumstances, counsel's challenged conduct falls outside the wide range of professionally competent assistance. *Id.* In doing so, the Court "should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Id.* Additionally, the Court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The Supreme Court's discussion about resulting prejudice begins with the observation "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Thus, under the prejudice inquiry, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In the context of a criminal trial, the prejudice inquiry requires the defendant to

show there is a reasonable probability that, absent trial counsel's errors, the jury would have had a reasonable doubt respecting guilt. *Id.* at 695.

The Court need not conduct the two-prong inquiry in the order identified above or even address both parts of the test if the defendant makes an insufficient showing on one. *Id.* at 697. For example, if the Court determines the defendant fails to satisfy the prejudice prong, then it need not determine whether counsel's performance was deficient. *Id.*

The Kentucky Court of Appeals discussed the two-part *Strickland* test before addressing the merits of Pollard's claim. *Pollard II*, 2023 WL 3666412, at *2. The pertinent part of the Kentucky Court of Appeals opinion reads:

> Pollard thirdly argues that his counsel should have raised a double-jeopardy objection. In this vein, we adopt the following part of the trial court's dispositive order, which properly summarized and correctly rejected Pollard's argument as follows:
>
>> Pollard argues that his trial counsel erred by failing to establish a defense of double jeopardy. He asserts that, while first degree robbery is not a lesser included offense of murder, the elements and factual allegations are similar enough that they are effectively the same offense. Therefore, counsel should have objected to the jury being instructed on murder and first degree robbery as separate crimes, because for him to be convicted of both would have violated double jeopardy. Pollard further argues once he was acquitted of murder, he must necessarily have been acquitted of first degree robbery as well. *Cf.* KRS 505.040.
>>
>> However, review of the law indicates that this is not the case. *Bennett v. Commonwealth*, Ky. 978 S.W.2d 322 (1998). Kentucky law uses the *Blockburger* test[FN] and KRS 505.020 in determining when a single course of conduct may establish more than one offense. *Id.*, 327.
>>
>> [FN] *Blockburger v. United States*, 284 U.S. 299 (1932).
>>
>> That test is whether the conduct violates two distinct statutes and, if so, whether each statute requires proof of an element the other does not. *Id.*

> Here, the offenses of murder and first degree robbery each have an element the other does not. *Id.* The death of the victim is an element necessary to convict of murder, but is not required to convict of first degree robbery. KRS 507.020(1). Theft or attempted theft is an element necessary to convict of first degree robbery, but is not required to convict of murder. KRS 515.020(1).
>
> There was no implication of double jeopardy in the grand jury's indicting the defendant or the Court's instructing the jury on both murder and first degree robbery. Defense counsel made no error in failing to object to it. Likewise, acquittal on the count of murder did not necessarily lead to acquittal on the count of robbery. Counsel made no error outside the range of reasonable professional assistance, and there is no error which prejudiced the defense or made the result of the trial unreliable.

*Pollard II*, 2023 WL 3666412, at *5. Essentially, the Kentucky Court of Appeals concluded that Pollard did not satisfy the performance and the prejudice requirements of the *Strickland* test because the underlying double jeopardy claim is meritless.

Pollard has failed to demonstrate that adjudication of this claim by the Kentucky Court of Appeals is contrary to or an unreasonable application of the clearly established precedent of the United States Supreme Court set forth in *Strickland*. 28 U.S.C. § 2254(d)(1). Additionally, Pollard has not demonstrated that the Kentucky Court of Appeals' conclusion was based upon "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Reasonable jurists would not find the above assessment of Pollard's claim debatable or wrong. *See* <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Therefore, Pollard is not entitled to a Certificate of Appealability on this claim raised in Ground five in the Amended Petition.

2.  *Failure to Request Lesser Included Offense Instruction*

In Ground Six, Pollard argues that his trial counsel rendered ineffective assistance because he failed to request jury instructions for lesser-included offenses to first-degree robbery and complicity to first-degree robbery (DN 31 PageID # 259).   In support of this claim, Pollard contends:

> The requirement of introducing some evidence justifying a reasonable inference of the existence [sic] of a defense is not a terribly high bar.  Given the lack of evidence to support the charges against Petitioner, he has a constitutional right to present a complete defense and the jury should have been instructed on all the facts of the case including possible lessor included offenses such as robbery second degree and complicity to robbery second degree.

(*Id.*).

Hughs asserts that the Court is precluded from considering this claim because Pollard did not present to the state courts in his Rule 11.42 action and his is now procedurally barred from doing so (DN 34 PageID # 282-83).   Further, Pollard has not alleged either cause or prejudice for the default, nor has he argued a miscarriage of justice would result from enforcing default in his case (*Id.* at PageID # 283).

Review of the record reveals that Pollard did not raise this claim of ineffective assistance of counsel in his Rule 11.42 motion (DN 34-10 PageID # 348-49; DN 34-11 PageID # 351-80). Additionally, Pollard failed to raise this claim in his collateral attack appeal.  *See Pollard II*, 2023 WL 3666412, at *3-7.  As Pollard did not fairly present his federal constitutional claim in his Rule 11.42 motion, under Kentucky law he is now procedurally barred from doing so.  *See* Ky. R. Crim. P. 11.42(3); *McDaniel v. Commonwealth*, 495 S.W.3d 115, 121 (Ky. 2016) (Explaining that Rule 11.42 gives an individual "one, and only one, opportunity to 'state all grounds for holding the sentence invalid.'").  As Pollard failed to present his federal constitutional claim in his collateral

attack brief to the Kentucky Court of Appeals, under Kentucky law, he is now procedurally barred from doing so.  *Gross v. Commonwealth*, 648 S.W.2d 853, 857 (Ky. 1983).  Consequently, federal review of the claim is barred absent a showing of cause for the default and actual prejudice arising from the claimed constitutional error *or* that failure to consider the federal claim will result in a "fundamental miscarriage of justice."  *See Harris v. Reed*, 489 U.S. 255, 262-64 (1989) (cleaned up); *Murray v. Carrier*, 477 U.S. 478, 485, 495-96 (1986).  But Pollard has not attempted to make either showing even though Hughs brought the procedural default issue to his attention.

Jurists of reason would not find it debatable whether federal review of Pollard's ineffective assistance of trial counsel claim is barred.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Therefore, the undersigned does not recommend the issuance of a Certificate of Appealability as to the ineffective assistance of trial counsel claim raised in Ground Six of the Amended Petition.

## IV.    RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Pollard's Amended Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (DN 31) be **DENIED** and **DISMISSED**.  Additionally, the undersigned **DOES NOT RECOMMEND** issuance of a Certificate of Appealability for the claims set forth in Pollard's Amended Petition.

July 11, 2024

H. Brent Brennenstuhl
United States Magistrate Judge

<u>NOTICE</u>

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b)(1), the undersigned magistrate judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2).  If a party has objections, such objections must be timely filed, or further appeal is waived.  *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985).

July 11, 2024

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies to:     Deangelo Pollard, *pro se*
                     Counsel of Record